1  **MICHAEL R.W. HOUSTON, CITY ATTORNEY**
   **MOSES W. JOHNSON, IV – State Bar No. 118769**
2  **Assistant City Attorney**
   **200 S. Anaheim Boulevard, Suite 356**
3  **Anaheim, CA  92805**
   **(714) 765-5169 / (714) 765-5123 [Fax]**
4  **mjohnson@anaheim.net**

5  **STEVEN J. ROTHANS – State Bar No. 106579**
   **JILL WILLIAMS – State Bar No. 221793**
6  **CARPENTER, ROTHANS & DUMONT**
   **888 S. Figueroa Street, Suite 1960**
7  **Los Angeles, CA  90017**
   **(213) 228-0400 / (213) 228-0401 [Fax]**
8  **srothans@crdlaw.com / jwilliams@crdlaw.com**

9  Attorneys for Defendants,
   CITY OF ANAHEIM (also erroneously sued as
10 Anaheim Police Department); and
   OFFICER NICK BENNALLACK

11 **LAW OFFICES OF DALE K. GALIPO**
   **Dale K. Galipo, (Bar No. 144074)**
12 dalekgalipo@yahoo.com
   **Melanie T. Partow, (Bar No. 254843)**
13 mpartow@galipolaw.com
   21800 Burbank Boulevard, Suite 310
14 Woodland Hills, California  91367
   Telephone:   (818) 347-3333
15 Facsimile:    (818) 347-4118

16 *Attorneys for Plaintiffs*

17

18                    **UNITED STATES DISTRICT COURT**

19                   **CENTRAL DISTRICT OF CALIFORNIA**

20

21 GENEVIEVE HUIZAR, individually )   Case No.: SACV12-01897 JVS (RNBx)
   and as successor in interest to Manuel )
22 Diaz,                               )   [*Honorable James V. Selna*]
                                        )
23          Plaintiffs,                )   **JOINT JURY INSTRUCTIONS**
                                        )   **(AGREED UPON, DISPUTED WITH**
24     vs.                             )   **OBJECTIONS, & [PROPOSED]**
                                        )   **ALTERNATIVE INSTRUCTIONS)**
25 CITY OF ANAHEIM, et al.,            )
                                        )
26          Defendants.                )
                                        )   Discovery Cut-Off: November 1, 2013
27 _____ )   Pre-Trial Conf.:  January 13, 2014
                                        )   Trial:  January 21, 2014
28

1     Pursuant to this Court's Scheduling Order, the parties hereby submit the

2  following agreed to and joint jury instructions, as well as their disputed jury

3  instructions, objections, and any instructions in the alternative, in the order to be

4  given.  The numbering begins where the numbering of the Court's initial

5  instructions left off.  Pursuant to the Court's standing order, to the extent any

6  instruction is modeled after a standard Ninth Circuit or CACI instruction, the

7  parties note any additions, changes and or deletions in the text of the proposed

8  instruction.

9

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 14. | Witnesses<br>*(Proposed by Defendants and Objected to by Plaintiff)* | CACI 107 | 1 |
| 15. | Earlier Inconsistent Statements<br>*(Proposed by Defendants and Objected to by Plaintiff)* | Devitt, Blackmar & Omalley, Federal Jury Practice & Instructions (4th ed. 1990 & supp.) § 15.01 (as modified). | 3 |
| 16. | Jury to be Guided by Official English Translation/Interpretation | Ninth Circuit Model Jury Instruction – 1.16 | 5 |
| 17. | Use of Interpreters in Court | Ninth Circuit Model Jury Instruction – 1.17 | 6 |
| 18. | Bench Conferences and Recesses | Ninth Circuit Model Jury Instruction – 1.18 | 7 |
| 19. | Judicial Notice<br>*(Proposed by Defendants / Objected to by Plaintiff)* | Ninth Circuit Model Jury Instruction – 2.3 | 8 |
| 20. | Deposition in Lieu of Live Testimony | Ninth Circuit Model Jury Instruction – 2.4 | 9 |
| 21. | Transcript of Tape Recording | Ninth Circuit Model Jury Instruction – 2.5 | 10 |
| 22. | Impeachment Evidence – Witness | Ninth Circuit Model Jury Instruction – 2.8 | 11 |
| 23. | Use of Interrogatories of a Party | Ninth Circuit Model Jury Instruction – 2.10 | 12 |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 24. | Expert Opinion | Ninth Circuit Model Jury Instruction – 2.11 | 13 |
| 25. | Section 1983 Claim- Introductory Instruction | Ninth Circuit Model Jury Instruction – 9.1 | 14 |
| 26. | Section 1983 Claim Against Defendant in Individual Capacity-Elements and Burden of Proof | Ninth Circuit Model Jury Instruction – 9.2 | 15 |
| 27. | Fourth Amendment – Unreasonable Seizure – Generally *(Proposed by Plaintiff / Objected to by Defendants)* | Ninth Cir. Model Civil Jury Instruction 9.18. | 16 |
| 28. | Fourth Amendment – Unreasonable Seizure of Person - Investigatory "Terry" Stop *(Proposed by Plaintiff / Objected to by Defendants)* | Ninth Cir. Model Civil Jury Instruction 9.19. | 19 |
| 29. | Fourth Amendment— Unreasonable Seizure of Person – Probable Cause Arrest *(Proposed by Plaintiff / Objected to by Defendants)* | Ninth Cir. Model Civil Jury Instruction 9.20; *Whren v. U.S.*, 517 U.S. 806, 809–810 (1996), citing *Florida v. J.L.* 529 U.S. 266, 271 (2000); *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004). | 21 |
| 30. | Duty to Cooperate with Police and Submit to Detention *(Proposed by Defendants/ Objected to by Plaintiff)* | CAL. PENAL CODE § 148(a); see also Hagberg v. California Federal Bank, 32 Cal.4th 350, 373 (2004); Miller v. Fano, 134 Cal. 103 (1901). | 22 |

JOINT [PROPOSED] JURY INSTRUCTIONS (AGREED UPON, DISPUTED WITH OBJECTIONS & ALTERNATIVE)

| No. | Title | Source | Page |
|---|---|---|---|
| 31. | Police Officers' Right to Conduct Investigatory Detentions *(Proposed by Defendants/ Objected to by Plaintiffs)* | Ninth Cir. Model Jury Instr. 9.19; <u>Terry v. Ohio</u>, 392 U.S. 1, 23-27 (1968); <u>Allen v. City of Portland</u>, 73 F.3d 232, 235 (9th Cir. 1996); <u>United States v. Dorais</u>, 241 F.3d 1124, 1130 (9th Cir. 2001); <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123-25 (2000) <u>United States v. Smith</u>, 633 F.3d 889, 893-94 (9th Cir. 2011). | 23 |
| 32. | Flight from Consensual Encounter *(Proposed by Plaintiff/ Objected to by Defendants)* | Comment to Ninth Circuit Model Instruction 9.18 ("In *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir.1993); also *U.S. v. Minor*, 382 F.Supp. 203, 207 (D. Hawaii 1974), citing *Sibron v. New York*, 392 U.S. 40, 66-67 (1968); *People v. Hester*, 119 Cal. App. 4th 376, 388 (2004), citing *Whren v. U.S.*, 517 U.S. 806, 813 (1996); *Brignoni–Ponce*, 422 U.S. at 885–886. | 27 |
| 33A. | Fourth Amendment – Excessive Force *(Proposed by Plaintiff/ Objected to by Defendants)* | Ninth Cir. Model Civil Jury Instruction 9.22 | 31 |
| 33B. | Fourth Amendment – Excessive (Deadly and Nondeadly Force) *(Proposed by Defendants/ Objected to by Plaintiff)* | Ninth Circuit Model Jury Instruction – 9.22 | 34 |

- 4 -

| No. | Title | Source | Page |
|---|---|---|---|
| 34. | Fourth Amendment – Excessive Force – Shooting<br>*(Proposed by Plaintiff / Objected to by Defendants)* | *Tennessee v. Garner*, 471 U.S. 1, 8-9, 11-12 (1985); *Bryan v. McPherson*, __ F.3d __, 2009 WL 5064477, at *2 (9th Cir. Dec. 28, 2009); *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (*en banc*); *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997); *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008); *Price v. Sery*, 513 F.3d 962, 966-67 (9th Cir. 2008); *Scott v. Harris*, 550 U.S. 372, 382-83 (2007); *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000). | 36 |
| 35A. | Particular Rights – Fourteenth Amendment Rights – Freedom from Interference with Familial Relations<br>*(Proposed by Defendants / Objected to by Plaintiff)* | Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008); Curnow ex rel. Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir.1991). | 39 |
| 35B. | Fourteenth Amendment Interference with Familial Relationship<br>*(Proposed by Plaintiff / Objected to by Defendants)* | *Porter v. Osborn,* 546 F.3rd 1131, 1136-37 (2009); *Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 372-73 (9th Cir. 1998). | 40 |
| 36. | Causation<br>*(Proposed by Defendants / Objected to by Plaintiff)* | Ninth Circuit Model Jury Instruction – 9.8 | 43 |

| No. | Title | Source | Page |
|---|---|---|---|
| 37. | Merely Negligent Conduct is Not a Civil Rights Violation *(Proposed by Defendants / Objected to by Plaintiff)* | Daniels v. Williams, 474 U.S. 327 (1986); Billington v. Smith, 292 F.3d 1177, 1190 (9th Cir. 2002); Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989). | 45 |
| 38. | Expert Witness Testimony Concerning Use of Force *(Proposed by Defendants / Objected to by Plaintiff)* | Scott v. Henrich, 39 F.3d 912 (9th Cir. 1994); Reynolds v. County of San Diego. 84 F.3d 1162 (9th Cir. 1996); Billington v. Smith, 292 F.3d 1177, 1189 (9th Cir. 2002). | 46 |
| 39. | Use of Force is From Perspective of Reasonable Officer *(Proposed by Defendants / Objected to by Plaintiff)* | Billington v. Smith, 292 F.3d 77, 1190 (9th Cir. 2002); Bell v. City of East Cleveland, 125 F.3d 855 (6th Cir. 1997) | 47 |
| 40. | A Police Officer Need Not Actually See a Weapon before Using Deadly Force *(Proposed by Defendants / Objected to by Plaintiff)* | People v. Minifie, 13 Cal.4th 1055, 1068 (1996); Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371, n.4 (9th Cir. 1998). | 49 |
| 41A. | Battery by a Peace Officer *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 1305 | 50 |
| 41B. | Battery by a Peace Officer *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 1305 | 52 |
| 42. | Self-Defense *(Proposed by Plaintiff / Objected to by Defendants)* | *People v. Humphrey,* 13 Cal.4th 1073, 1093 (1996); *People v. Clark*, 130 Cal.App.3d at 380; *People v. Jones*, 191 Cal.App.2d 478, 482 (1961); *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). | 54 |
| 43A. | Negligence – Essential Factual Elements *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 400 | 57 |

| No. | Title | Source | Page |
|---|---|---|---|
| 43B. | Negligence – Essential Factual Elements *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 400 | 57 |
| 44A. | Negligence – Basic Standard of Care *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 401 | 58 |
| 44B. | Negligence – Basic Standard of Care *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 401 | 60 |
| 45. | Comparative Fault of Decedent *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 407 | 61 |
| 46. | Reliance on Good Conduct of Others *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 411 | 63 |
| 47. | Custom or Practice *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 413 | 64 |
| 48A. | Causation – Substantial Factor *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 430 | 66 |
| 48B. | Causation – Substantial Factor *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 430 | 67 |
| 49. | Multiple Causes *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 431 | 68 |
| 50. | Alternate Causation *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 434 | 69 |
| 51. | Vicarious Liability – Introduction *(Proposed by Plaintiff / Objected to by Defendants)* | CACI 3700 | 70 |
| 52. | Presumption of Negligence Per Se *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 418; CALCRIM 2656 | 71 |

| No. | Title | Source | Page |
|---|---|---|---|
| 53A. | Damages – Proof *(Proposed by Defendants / Objected to by Plaintiff)* | Ninth Circuit Model Jury Instruction – 5.1, CACI 3921 | 74 |
| 53B. | Damages *(Proposed by Plaintiff / Objected to by Defendants)* | U.S. Court of Appeals for the Ninth Circuit, Manual of Model Civil Jury Instructions, Instructions 5.1, 5.2. | 77 |
| 54. | Comparative Fault of the Decedent *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 3960 | 80 |
| 55. | Punitive Damages – Entitlement Only *(Proposed by Plaintiff / Objected to by Defendants)* | Ninth Cir. Model Instruction 5.5 | 82 |
| 56. | No Punitive Damages *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 3924 | 85 |
| 57. | Arguments of Counsel not Evidence of Damages *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 3925 | 86 |
| 58. | Jurors not to Consider Attorney Fees and Court Costs *(Proposed by Defendants / Objected to by Plaintiff)* | CACI 3964 | 87 |
| 59. | Duty to Deliberate | Ninth Circuit Model Jury Instruction – 3.1 | 88 |
| 60. | Communication with Court | Ninth Circuit Model Jury Instruction – 3.2 | 89 |
| 61. | Return of Verdict | Ninth Circuit Model Jury Instruction – 3.3 | 90 |

DATED:  January 14, 2014          LAW OFFICES OF DALE K. GALIPO

/s/

By: _____

Dale K. Galipo, Esq.
Melanie Partow, Esq.
Attorneys for Plaintiffs

- 8 -

1

DATED:  January 14, 2014

2

CITY OF ANAHEIM,
OFFICE OF THE CITY ATTORNEY

3

/s/

By: _____

4

5

Moses W. Johnson IV, Esq.
Attorneys for Defendants

6

7

DATED:  January 14, 2014

CARPENTER, ROTHANS & DUMONT

8

/s/

9

By: _____

10

Steven J. Rothans, Esq.
Jill Williams, Esq.
Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION #14

### WITNESSES

A witness is a person who has knowledge related to this case. You will have to decide whether you believe each witness and how important each witness's testimony is to the case. You may believe all, part, or none of a witness's testimony.

In deciding whether to believe a witness's testimony, you may consider, among other factors, the following:

(a)     How well did the witness see, hear, or otherwise sense what he or she described in court?

(b)     How well did the witness remember and describe what happened?

(c)     How did the witness look, act, and speak while testifying?

(d)     Did the witness have any reason to say something that was not true? ~~For example,~~ Did the witness show any bias or prejudice ~~or have a personal relationship with any of the parties involved in the case or have a personal stake in how this case is decided~~? Did the witness have a personal relationship with any of the parties involved in the case? Does the witness have a personal stake in how this case is decided?

(e)     What was the witness's attitude toward this case or about giving testimony?

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

- 1 -

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Do not make any decision simply because there were more witnesses on one side than on the other. If you believe it is true, the testimony of a single witness is enough to prove a fact.

You must not be biased in favor of or against any witness because of his or her disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, or socioeconomic status.

<u>Source</u>:  CACI 107

### A.    <u>Plaintiffs' Objection</u>

This instruction, based on CACI 107, is duplicative of Ninth Circuit Model Instruction No. 1.11 – which the Court has already ordered that it will give. See Court's Instruction No. 10.

### B.    <u>Defendants' Response</u>

The defendants submit that this proposed instruction – which is a model California civil jury instruction  (CACI 107), is more comprehensive than the Ninth Circuit Model Jury Instruction and, therefore, believe that it will aid the jury.

1    **DEFENDANTS' PROPOSED INSTRUCTION #15**

2    **EARLIER INCONSISTENT STATEMENTS**

3         The testimony of a witness may be discredited or, as we sometimes say,

4    impeached by showing that he or she previously made statements which are

5    different than or inconsistent with his or her testimony here in court.  Some of the

6    earlier inconsistent or contradictory statements are admissible only to discredit or

7    impeach the credibility of the witness and not to establish the truth of these earlier

8    statements made somewhere other than here during this trial.  It is the province of

9    the jury to determine the credibility, if any, to be given to the testimony of a

10   witness who has made prior inconsistent or contradictory statements.

11        If a person is shown to have knowingly testified falsely concerning any

12   important or material matter, you obviously have a right to distrust the testimony

13   of such an individual concerning other matters.  You may reject all of the

14   testimony of that witness or give it such weight or credibility as you may think it

15   deserves.

16

17   Source:  Devitt, Blackmar & Omalley, Federal Jury Practice & Instructions (4th

18   ed. 1990 & supp.) § 15.01 (as modified).

19

20        **A.    Plaintiffs' Objection**

21        This special instruction is duplicative of Ninth Circuit Model Instruction

22   No. 1.11 – which the Court has already ordered that it will give. *See* Court's

23   Instruction No. 10.

24

25        **B.    Defendants' Response**

26        This proposed instruction is not remotely duplicative of the Court's

27   Instruction No. 10.  This instruction is modeled after a sample jury instruction in a

28   leading treatise on federal court jury practice.  In light of the numerous

- 3 -

1  inconsistencies between deposition testimony of Plaintiff Huizar, Witness Lupe

2  Diaz (the decedent's sister) and various other witnesses and statements these

3  individuals made to the Orange County District Attorney's Office, the defendants

4  submit that this instruction is appropriate and will help the jury in assessing these

5  witnesses' credibility.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT [PROPOSED] JURY INSTRUCTIONS (AGREED UPON, DISPUTED WITH OBJECTIONS & ALTERNATIVE)

## **JOINT & AGREED UPON INSTRUCTION #16**

### **JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION**

Languages other than English may be used during this trial.

The evidence to be considered by you is only that provided through the official court interpreters. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

Source:  Ninth Circuit Model Jury Instruction – 1.16

# JOINT AGREED UPON INSTRUCTION #17
## USE OF INTERPRETERS IN COURT

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

Source:  Ninth Circuit Model Jury Instruction – 1.17

## JOINT & AGREED UPON INSTRUCTION #18
### BENCH CONFERENCES AND RECESSES

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess.  Please understand that while you [are] [were] waiting, we [are] [were] working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum.  I [may] [did] not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

<u>Source</u>:  Ninth Circuit Model Jury Instruction – 1.18

# DEFENDANTS' PROPOSED INSTRUCTION #19

## JUDICIAL NOTICE

The court has decided to accept as proved the following facts, even though no evidence has been introduced on the subject:

    (1)    On October 17, 2008, Manuel Diaz was convicted of two felonies.

    (2)    On March 22, 2011, Manuel Diaz was convicted of two felonies.

You must accept these facts as true.

Source:  Ninth Circuit Model Jury Instruction – 2.3

### A.    Plaintiffs' Objection

This proposed instruction violates the Court's ruling to exclude the decedent's specific convictions and order limiting the evidence such that the jury will only learn that the decedent spent time away in a state prison.  That the convictions were felonies or the number of charges involved in each conviction are irrelevant to the information pertinent to the fact that he was away in prison. Moreover, a specific judicial notice instruction is unnecessary given that the Court has stated it will give an appropriate limiting instruction concerning this evidence.

### B.    Defendants' Response

The defendants have revised this proposed jury instruction to omit reference to the specific crimes of which the decedent was convicted.  This revised instruction includes only that information that the Court has already deemed admissible.

# JOINT & AGREED UPON INSTRUCTION #20

## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Anna Ventura was taken on October 16, 2013. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Source: Ninth Circuit Model Jury Instruction – 2.4

1

2

3

## **JOINT & AGREED UPON INSTRUCTION #21**

## **TRANSCRIPT OF TAPE RECORDING**

4      You have listened to a tape recording that has been received in evidence.

5  Each of you was given a transcript of the recording to help you identify speakers

6  and as a guide to help you listen to the tape.  However, bear in mind that the tape

7  recording is the evidence, not the transcript. If you heard something different from

8  what appeared in the transcript, what you heard is controlling. After the tape has

9  been played, the transcript will be taken from you.

10

11  Source:  Ninth Circuit Model Jury Instruction – 2.5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT & AGREED UPON INSTRUCTION #22**

**IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness [e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Source:  Ninth Circuit Model Jury Instruction – 2.8

1   **JOINT & AGREED UPON INSTRUCTION #23**

2   **USE OF INTERROGATORIES OF A PARTY**

3

4       Evidence was presented to you in the form of answers of one of the parties

5   to written interrogatories submitted by the other side.  These answers were given

6   in writing and under oath, before the actual trial, in response to questions that were

7   submitted in writing under established court procedures.  You should consider the

8   answers, insofar as possible, in the same way as if they were made from the

9   witness stand.

10

11  <u>Source</u>:  Ninth Circuit Model Jury Instruction – 2.10

**JOINT & AGREED UPON INSTRUCTION #24**

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

<u>Source</u>:  Ninth Circuit Model Jury Instruction – 2.11

### JOINT & AGREED UPON INSTRUCTION #25

### SECTION 1983 CLAIM—INTRODUCTORY INSTRUCTION

The plaintiff brings some of her claims under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

Source:  Ninth Circuit Model Jury Instruction – 9.1

**JOINT & AGREED UPON INSTRUCTION #26**

**SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL**

**CAPACITY—ELEMENTS AND BURDEN OF PROOF**

In order to prevail on her Section 1983 claims against the defendants, the plaintiff must prove each of the following elements by a preponderance of the evidence:

    1.    Officer Nick Bennallack acted under color of law; and

    2.    The acts of Officer Nick Bennallack deprived ~~the~~ Manuel Diaz and/or Genevieve Huizar of their particular rights under the United States Constitution as explained in later instructions.

~~A person acts "under color of law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance, or regulation.~~ The parties have stipulated that ~~the defendant~~ Officer Nick Bennallack acted "under color of law" when he shot Manuel Diaz.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements they are required to prove under Instructions _____, your verdict should be for the plaintiff.   If, on the other hand, the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendants.

Source:  Ninth Circuit Model Jury Instruction – 9.2

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 27**

<u>Fourth Amendment – Unreasonable Seizure – Generally</u>

As previously explained, the plaintiff has the burden to prove that the act[s] of the defendant Officer Bennallack deprived *Manuel Diaz* ~~the plaintiff~~ of particular rights under the United States Constitution. In this case, the plaintiff alleges the defendant deprived *Manuel Diaz* of his rights under the Fourth Amendment to the Constitution when *Officer Bennallack decided to detain Mr. Diaz although Officer Bennallack had no information that Mr. Diaz committed any crime.*

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove the defendant deprived *Manuel Diaz* ~~the plaintiff~~ of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

      1. Officer Bennallack seized the plaintiff's person;

      2. in seizing the plaintiff's person, Officer Bennallack acted intentionally; and

      3. the seizure was unreasonable.

A defendant "seizes" ~~the plaintiff's~~ *a* person when he restrains ~~the plaintiff's~~ *a person's* liberty by physical force or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

In determining whether a reasonable person in ~~the plaintiff's~~ *Manuel Diaz'* position would have felt free to leave, consider all of the circumstances, including

      1. the number of officers present;

      2. whether weapons were displayed;

      3. whether the encounter occurred in a public or nonpublic setting;

- 16 -

1    4. whether the officer's manner would imply that compliance would

2    be compelled; and

3    5. whether the officers advised the plaintiff that [he] [she] was free to

4    leave.

5    A person acts "intentionally" when the person acts with a conscious

6    objective to engage in particular conduct.  Thus, the plaintiff must prove the

7    defendant meant to engage in the act[s] that caused a seizure ~~of the plaintiff's~~

8    ~~person~~. Although the plaintiff does not need to prove the defendant intended to

9    violate ~~the plaintiff's~~ Manuel Diaz' Fourth Amendment rights, it is not enough if

10   the plaintiff only proves the defendant acted negligently, accidentally or

11   inadvertently in conducting the seizure.

12

13   Source: Ninth Cir. Model Civil Jury Instruction 9.18.

14

15   **A.      Defendants' Objection**

16   The defendants object to the plaintiffs' proposed Instruction #1 for various

17   reasons.  As a preliminary matter, as evidenced by the language the plaintiffs use

18   in their proposed instruction, the plaintiffs cannot state a claim for unreasonable

19   detention based upon Officer Bennallack's "decision to detain" Manuel Diaz.  In

20   this regard, the plaintiffs argue that Officer Bennallack "deprived Manuel Diaz of

21   his rights under the Fourth Amendment to the Constitution when Officer

22   Bennallack decided to detain Mr. Diaz, although Officer Bennallack had no

23   information that Mr. Diaz committed any crime."   Quite simply, Officer

24   Bennallack's "decision" to detain Manuel Diaz is not actionable.  This argument is

25   illogical and puts the cart before the horse.  This argument is akin to saying that an

26   individual commits a burglary not when the individual actually burglarizes a

27   home, but the years, days, hours or minutes before, when e individual "decided" to

28   burglarize a home.

- 17 -

The threshold element of an "unreasonable seizure" is an actual seizure. See 9th Cir. Model Jury Instr. 9.18.  In this regard, the Supreme Court has unequivocally held that a seizure does not occur when a suspect does not yield to an officer's show of authority.  California v. Hodari D., 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield.   We hold that it does not."); see also Brendlin v. California, 551 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.");  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 n. 7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment.").  .  Ninth Circuit precedent is in accord.  United States v. Hernandez, 27 F.3d 1403, 1406-07 (9th Cir. 1994); United States v. McClendon, 713 F.3d 1211 (9th Cir. 2013).

At most, when Officer Bennallack "decided to detain" Mr. Diaz, an "attempted seizure" occurred.  As the Supreme Court has held, an "attempted seizure" is "beyond the scope of the Fourth Amendment."  Lewis, supra, 523 U.S. at 845 n. 7.

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 28

Fourth Amendment – Unreasonable Seizure of Person - Investigatory "Terry" Stop

In general, a seizure of a person for an investigatory stop is reasonable if, under all of the circumstances known to the officer at the time:

1.   the officer had a reasonable suspicion that the person seized was engaged in criminal activity ~~[other conduct justifying investigation, i.e., a traffic infraction]~~; and

2.   the length and scope of the seizure was reasonable.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that *Officer Bennallack* lacked reasonable suspicion to stop *Manuel Diaz* or that the length and scope of the stop was excessive.

"Reasonable suspicion" is an objectively reasonable belief based on specific and articulable facts.

In determining whether the length and scope of the seizure was reasonable, consider how the officer restricted the plaintiff's liberty and the officer's reason's for using such methods and for the length of the stop.

Source: Ninth Cir. Model Civil Jury Instruction 9.19.

### A.   Defendants' Objection

As with the plaintiffs' proposed Instruction #1, plaintiffs' Instruction #2 is objectionable because it is predicated on an "attempted seizure" – conduct that is not within the scope of the Fourth Amendment.   The plaintiffs request that the Court instruct the jury that, "the plaintiffs must prove . . . that Officer Bennallack lacked reasonable suspicion to stop Manuel Diaz or that the length and scope of the stop was excessive."  Again, the plaintiffs' own phrasing highlights why this

1    instruction is inappropriate.

2         In short, the plaintiffs appear to premise this instruction on a non-existent

3    initial "stop" of Manuel Diaz.  However, as noted above, the threshold element of

4    a claim for unreasonable seizure is an actual seizure.  See 9th Cir. Model Jury

5    Instr. 9.18.  Here, Diaz was not seized when the officers pulled into the alley.  Diaz

6    was not seized when the officers exited their patrol car.  Diaz was not seized when

7    he led the officers on a foot pursuit.  Unquestionably, Diaz was not seized until he

8    was shot by Officer Bennallack.  Thus, until Officer Bennallack shot Diaz, the

9    most that had occurred – as evidenced by Diaz's flight – was an "attempted

10   seizure."  The lawfulness of the actual seizure that occurred in this case

11   appropriately addressed by Ninth Circuit Model Jury Instruction 9.22, which

12   expressly instructs the jury on how to analyze the reasonableness of the seizure

13   that occurred in this case.

14        Because no seizure occurred when Officer Bennallack pulled into the alley

15   or exited his patrol car or pursued Diaz on foot, it is respectfully submitted that the

16   plaintiffs' proposed Instruction #2 has no place in this case.  To the extent the

17   Court is inclined to offer this instruction or a variation thereof, the defendants

18   submit that the jury must be instructed as to the effect of Diaz's flight and the

19   nature of the neighborhood, as requested in defendants' proposed Instruction #10,

20   on the reasonable suspicion analysis.

21

22

23

24

25

26

27

28

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 29

Fourth Amendment—Unreasonable Seizure of Person – Probable Cause Arrest

In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officer had probable cause to believe the *person* ~~plaintiff~~ has committed or was committing a crime.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that *Manuel Diaz* was arrested without probable cause.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime. *Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.* ~~Under [federal] [state] law, it is a crime to [*insert elements or description of applicable crime for which probable cause must have existed*]~~.

Source:  Ninth Cir. Model Civil Jury Instruction 9.20; *Whren v. U.S.*, 517 U.S. 806, 809–810 (1996), citing *Florida v. J.L.* 529 U.S. 266, 271 (2000); *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004).

### A.   **Defendants' Objection**

This instruction is inappropriate, where Manuel Diaz was never arrested.  In fact, as discussed above relative to the plaintiffs' proposed instructions #1 and #2, Manuel Diaz was not even seized until the moment he was shot.

## DEFENDANTS' PROPOSED INSTRUCTION #30

## DUTY TO COOPERATE WITH POLICE AND SUBMIT TO DETENTION

If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being detained or arrested by a peace officer, it is the duty of such person to submit to such a detention or arrest.

Source:  CAL. PENAL CODE § 148(a); see also Hagberg v. California Federal Bank, 32 Cal.4th 350, 373 (2004); Miller v. Fano, 134 Cal. 103 (1901).


### A.  Plaintiffs' Objection

This instruction is an incomplete and inaccurate statement of the law. Moreover, it is inapplicable.  The parties' experts agree that the incident began as a consensual encounter from which Mr. Diaz was free to leave.  Furthermore, a person has a right to flee or to defend one's self from the use of excessive force during the course of a detention and arrest. *U.S. v. Span*, 970 F.2d 573, 577, fn. 3 (9th Cir. 1992) (recognizing the right to use reasonable force to repel excessive force by a law enforcement officer in self-defense).


### B.  Defendants' Response

The defendants submit that this instruction is an accurate statement of the law that will assist the jury in assessing liability.  Furthermore, this instruction is necessary because the plaintiffs are now challenging the propriety of initial *attempted* detention of Manuel Diaz and are suggesting that this initial *attempted* detention was somehow unlawful.

**DEFENDANTS' PROPOSED INSTRUCTION #31**

**POLICE OFFICERS' RIGHT TO CONDUCT INVESTIGATORY DETENTIONS**

~~In general, a seizure of a person for an investigatory stop is reasonable if, under all of the circumstances known to the officer[s] at the times:~~ A police officer may conduct a brief stop for investigatory purposes when the officer has "reasonable suspicion" ~~that the person seized was~~ to believe the stopped individual is engaged in criminal activity~~; and the length and scope of the seizure was reasonable.  In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that the officer[s] lacked reasonable suspicion to stop [him] [her] or that the length and scope of the stop was excessive.~~  Reasonable suspicion is ~~an objectively reasonable belief based on~~ formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.).  Reasonable suspicion requires only a minimal level of objective justification. ~~In determining whether the length and scope of the seizure was reasonable, consider how the officer[s] restricted the plaintiff's liberty and the officer's reason[s] for using such methods and for the length of the stop.~~

A person's headlong, unprovoked flight upon seeing a police officer, when it occurs in a high-crime neighborhood, is sufficient to establish reasonable suspicion that the person is involved in criminal activity.

Source:  Ninth Cir. Model Jury Instr. 9.19; Terry v. Ohio, 392 U.S. 1, 23-27 (1968); Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1996); United States v. Dorais, 241 F.3d 1124, 1130 (9th Cir. 2001); Illinois v. Wardlow, 528 U.S. 119, 123-25 (2000) (holding that a person's headlong, unprovoked flight upon seeing a police officer, when it occurs in a high-crime neighborhood, is sufficient to

- 23 -

1   establish reasonable suspicion that the person is involved in criminal activity.

2   "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not

3   necessarily indicative of wrongdoing, but it is certainly suggestive of such . .

4   Flight, by its very nature, is not 'going about one's business'; in fact, it is just the

5   opposite."); United States v. Smith, 633 F.3d 889, 893-94 (9th Cir. 2011).

6

7       **A.**    **Plaintiffs' Objection**

8       There is no good reason to deviate from the Model Ninth Circuit instruction

9   on unlawful arrest/unreasonable detention.  Plaintiff proposes use of the model

10   instructions for Plaintiff's unlawful detention and arrest claim depending upon

11   whether the evidence shows that Officer Bennallack intended to arrest or detain

12   Mr. Diaz.

13       Moreover, Defendants' instruction is an incorrect statement of the law.

14   Flight and presence in a high-crime neighborhood, without more, is insufficient

15   reason to suspect criminal activity. *See U.S. v. Minor*, 382 F.Supp. 203, 207 (D.

16   Hawaii 1974), citing *Sibron v. New York*, 392 U.S. 40, 66-67 (1968).   The Fourth

17   Amendment protects the freedom of all citizens to walk away from police officers

18   when there is no criminal activity reported or afoot.  To hold otherwise simply

19   because a person is present in a high crime area is derogates from years of

20   Supreme Court precedent.  For example, to justify the detention because the area is

21   known for gang activity or because other crimes occurred there on prior occasions

22   "is to assume as fact that every [Hispanic] male between the ages of 15 and 25 in

23   this part of [Anaheim] is an East Side [Anaheim] member, or that every [Hispanic]

24   male between the ages of 15 and 25" in an area where East Side Anaheim crimes

25   previously took place "also must be an East Side [Anaheim] member.  These

26   conclusions are far too consistent with racial profiling to be constitutionally

27   permissible." *Hester*, 119 Cal. App. 4th at 388, citing *Wren v. U.S.*, 517 U.S. 806,

28   813 (1996); *Brignoni–Ponce*, 422 U.S. at 885–886.

1    Even if there is evidence that crimes *had* reportedly taken place in the area

2    on the date of this incident, *which there is not*, it would still be objectively

3    unreasonable to justify the seizure of a Hispanic male because he is present in a

4    high crime neighborhood and chooses not to come into contact with the police. *See*

5    *People v. Walker*, 210 Cal.App.4th 1372, *6 (2012) (finding it objectively

6    *unreasonable* where the commonality between the persons seized and the crime

7    suspects was that they were both black males); *Mendoza v. City of Rome, N.Y.,* 872

8    F.Supp. 1110, 1117 (N.D.N.Y. 1994) ("Vague descriptions of white teenagers

9    cannot justify the arrest and manhandling of someone who just happened to be in

10   the vicinity of… a crime."); *see also Williams*, 168 Cal.App.3d 349, 353-54

11   (1985); *People v. Bower*, 24 Cal.3d 638, 644 (1979) (race insufficient reason to

12   connect individual with reported criminal activity).

13

14   ### B.    Defendants' Response

15   The plaintiffs' objection to this proposed jury instruction is meritless for

16   several reasons.  First and foremost, the plaintiffs' blatantly misstate the law when

17   they argue that "flight and presence in a high-crime neighborhood, without more,

18   is insufficient reason to suspect criminal activity."  Contrary to the outdated

19   authority cited by the plaintiffs, both the Ninth Circuit and the Supreme Court

20   have held that a high-crime neighborhood, coupled with headlong flight, is

21   sufficient to establish reasonable suspicion.  Illinois v. Wardlow, 528 U.S. 119,

22   124-25 (2000) (**"[h]eadlong flight – wherever it occurs – is the consummate act**

23   **of evasion: It is not necessarily indicative of wrongdoing, but it is certainly**

24   **suggestive of such ... Flight, by its very nature, is not 'going about one's**

25   **business'; in fact, it is just the opposite."**); United States v. Smith, 633 F.3d 889

26   (9th Cir. 2011).  Recently, in United States v. Smith, the Ninth Circuit addressed

27   circumstances virtually identical to those at issue in this case and found that

28   reasonable suspicion existed to detain an individual:

Smith's initial reaction was not suspicious.  Had he simply
continued to go about his business, or walked away, Officer
Dominguez would not have had reasonable suspicion to seize
him.  See [Wardlow] at 125, 120 S.Ct. 673 ("[W]hen an officer,
without reasonable suspicion or probable cause, approaches an
individual, the individual has a right to ignore the police and go
about his business." [Citation omitted.]  But, like the defendant
in Wardlow, Smith did not simply go about his business.
Instead, he launched into headlong flight. "Flight, by its very
nature, is not 'going about one's business'; in fact, it is just the
opposite." [Citation omitted.]

Id. at 894.

Moreover, because the plaintiffs are now pursuing a separate claim that
challenges the initial *attempted* encounter between Diaz and the officers, the
defendants submit that this instruction is necessary to advise the jury of the effect
of Diaz's flight on the reasonable suspicion analysis.

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 32

### Flight from Consensual Encounter

A "consensual" encounter with police is one from which a person is free to leave.  Flight from a consensual encounter, without more, is insufficient reason to suspect criminal activity.

Source: Comment to Ninth Circuit Model Instruction 9.18 ("In *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir.1993), the Ninth Circuit explained that "stops" under the Fourth Amendment fall into three categories: First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures."); see also *U.S. v. Minor*, 382 F.Supp. 203, 207 (D. Hawaii 1974), citing *Sibron v. New York*, 392 U.S. 40, 66-67 (1968).   The Fourth Amendment protects the freedom of all citizens to walk away from police officers when there is no criminal activity reported or afoot.  To hold otherwise simply because a person is present in a high crime area is derogates from years of Supreme Court precedent.  For example, to justify the detention because the area is known for gang activity or because other crimes occurred there on prior occasions "is to assume as fact that every [Hispanic] male between the ages of 15 and 25 in this part of [Anaheim] is an East Side [Anaheim] member, or that every [Hispanic] male between the ages of 15 and 25" in an area where East Side Anaheim crimes previously took place "also must be an East Side [Anaheim] member.  These conclusions are far too consistent with racial profiling to be constitutionally permissible." People v. *Hester*, 119 Cal. App. 4th 376, 388 (2004), citing *Whren v. U.S.*, 517 U.S. 806, 813 (1996); *Brignoni–Ponce*, 422 U.S. at 885–886.

Even if there is evidence that crimes *had* reportedly taken place in the area on the date of this incident, *which there is not*, it would still be objectively unreasonable to justify the seizure of a Hispanic male because he is present in a high crime neighborhood and chooses not to come into contact with the police. *See People v. Walker*, 210 Cal.App.4th 1372, *6 (2012) (finding it objectively *unreasonable* where the commonality between the persons seized and the crime suspects was that they were both black males); *Mendoza v. City of Rome, N.Y.*, 872 F.Supp. 1110, 1117 (N.D.N.Y. 1994) ("Vague descriptions of white teenagers cannot justify the arrest and manhandling of someone who just happened to be in the vicinity of… a crime."); *see also Williams*, 168 Cal.App.3d 349, 353-54 (1985); *People v. Bower*, 24 Cal.3d 638, 644 (1979) (race insufficient reason to connect individual with reported criminal activity).

### A.  **Defendants' Objection**

The defendants object to the plaintiffs' proposed instruction #5 for two reasons.  First, as noted above, Diaz was not seized either physically or for purposes of the Fourth Amendment until he was shot.  The plaintiffs' proposed jury instruction suggests that Diaz was seized at the time the officers pulled into the alley and exited their patrol car to speak to Diaz.

Second, as a matter of law, reasonable suspicion existed to detain Diaz after he fled.  As the Supreme Court and Ninth Circuit have both held, flight, coupled with the high-crime nature of a neighborhood  are sufficient to establish reasonable suspicion.  Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000) ("[h]eadlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such ... Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite."); United States v. Smith, 633 F.3d 889 (9th Cir. 2011).   In Smith, *supra*, the Ninth Circuit addressed circumstances virtually identical to those at issue in this case and

1   found that reasonable suspicion existed to detain an individual:

> Smith's initial reaction was not suspicious.  Had he simply continued to go about his business, or walked away, Officer Dominguez would not have had reasonable suspicion to seize him.  See [Wardlow] at 125, 120 S.Ct. 673 ("[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." [Citation omitted.] But, like the defendant in Wardlow, Smith did not simply go about his business. Instead, he launched into headlong flight. "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite."  [Citation omitted.]

Id. at 894.  Similarly, here, upon seeing the officers enter the alley, Diaz could have continued to go about his business or walk away.  However, Diaz did not; instead, he launched into headlong flight.  Diaz's conduct, coupled with the nature of the neighborhood, gave the officers reasonable suspicion to detain him.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 33A**

**FOURTH AMENDMENT – EXCESSIVE FORCE**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in defending himself or others. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that Officer Nick Bennallack used excessive force when he shot *and killed* Manual Diaz.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene - and not with the 20/20 vision of hindsight.  In determining whether the force was reasonable in this case, you should consider all of the circumstances known to the officer on the scene, including:

1.   The severity of the crime or other circumstances to which the deputy was responding;

2.   Whether *Manuel Diaz* posed an imminent threat *of death or serious physical injury* to the deputy or others at the time of the use of deadly force;

3.   Whether *Manuel Diaz* was actively resisting arrest or attempting to evade arrest by flight;

4.   The amount of time and any changing circumstances during which the deputy had to determine the type and amount of force that appeared to be necessary;

5.   The type and amount of force used;

6.   The availability of alternative methods to take the decedent into custody.

7.   *Whether it was feasible to give a warning that deadly force would be used and if so, whether any such warning was given.*

Source:  U.S. Court of Appeals for the Ninth Circuit, Manual of Model Civil Jury Instructions, Instruction 9.22 (Approved 12/2007); "[T]he Supreme Court did not limit the reasonableness inquiry to the factors set forth in *Graham*" and this list of elements in 9.22 is similarly not restricted. *Smith v. City of Hemet*, 394 F.3d at 701.  "[T]he instructions as a whole [should] 'fairly and adequately cover[] the issues presented." *Brewer v. City of Napa*, 210 F.3d 1093, 1096–97 (9th Cir.2000). Accordingly, the 9.22 instruction should account for the fact that the nature of the force used was deadly force.

### A.   **Defendants' Objection**

The plaintiffs' proposed version of Ninth Circuit Model Jury Instruction 9.22 is objectionable for several reasons.

First and foremost, the plaintiffs' use of the phrase "Officer Nick Bennallack used excessive force when he shot *and killed* Manual Diaz" in the first paragraph is inflammatory and suggests to the jury that Officer Bennallack intended to *kill* Manuel Diaz when he shot.  The defendants submit the words "and killed" should not be included within this jury instruction.

Second, the defendants submit that their proposed version of the jury instructions is a proper version of the Model Jury Instruction and that the plaintiffs' two additional proposed factors should be omitted.  With regard to the availability of alternative methods of taking the decedent into custody, the Ninth Circuit has expressly held that it is not error for a trial court to decline to instruct explicitly on the availability of "alternative courses of action" when the instructions as a whole "fairly and adequately cover[ed] the issues presented." Brewer v. City of Napa, 210 F.3d 1093, 1096–97 (9th Cir. 2000).  This is not a situation where Officer Bennallack shot Manuel Diaz because he was trying to apprehend a fleeing felon or take Manuel Diaz into custody.  Officer Bennallack shot Manuel Diaz because he believed that Manuel Diaz had a gun and that

1   Manuel Diaz was going to use that gun to shoot him or Officer Heitmann.

2   Moreover, the plaintiffs' proposed sixth factor contravenes Ninth Circuit authority

3   that an officer need not use the least intrusive alternative use of force when

4   confronting a suspect.  See Scott v. Heinrich, 39 F.3d 912, 915 (9th Cir. 1992)

5   ("[r]equiring officers to find and choose the least intrusive alternative would

6   require them to exercise superhuman judgment.").

7        In Miramontes v. Klevos, 517 Fed.Appx. 574 (9th Cir. 2013), the Ninth

8   Circuit recently upheld a trial court's decision to only include the same five factors

9   of 9.22 proposed by the defendants here.  The Court held:

10          "[I]t is not error for a trial court to decline to instruct

11          explicitly on the availability of 'alternative courses of action" if

12          the whole of the jury instruction fairly and accurately covers

13          the legal issues presented.  [Citation].  That was the case here.

14          The court instructed the jury to "consider all of the

15          circumstances known to them on the scene," in assessing what

16          was "objectively reasonable."  This "general

17          reasonableness/'totality of the circumstances' instruction[ ]" is

18          appropriate "in an excessive force case, despite the plaintiff's

19          request for more detailed instructions addressing the specific

20          factors to be considered in the reasonableness calculus."

21          [Citations].

22            Nor does the court's decision to include five specific

23          considerations adapted from Graham v. Connor, 490 U.S. 386,

24          396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) render the

25          instruction infirm.  Miramontes's argument that the jury likely

26          limited itself to those factors founders on the principle that

27          "juries are presumed to follow the court's instructions."

28          [Citation].  Not only did the instruction reference all the

- 32 -

1            circumstances, but the list of the five factors was prefaced with

2            the word "including."

3 <u>Id.</u> at 574-75.

4       Ninth Circuit Model Jury Instruction 9.22, with the five factors requested by

5 the defendants fairly and accurately cover the legal issues presented.  The plaintiffs

6 can argue their proposed sixth and seventh factors as a factual matter to the jury.

7 However, including those factors in the jury instruction invites the jury to give

8 undue weight to those factors – over the numerous other factors that were present

9 at the time of the incident (including Manuel Diaz's failure to comply with the

10 officers' commands to stop, Diaz's flight upon seeing police officers or Diaz's

11 hand movements prior to the shooting).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION #33B**

**PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE (DEADLY AND NONDEADLY) FORCE**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in defending himself and others.  Thus, in order to prove an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that ~~the officer[s]~~ Officer Nick Bennallack used excessive force when he shot Manuel Diaz.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.  In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether ~~the officers~~ Officer Nick Bennallack used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1.   The severity of the crime or other circumstances to which the officers were responding;

2.   Whether ~~the plaintiff~~ Manuel Diaz posed an immediate threat to the safety of the officer or to others;

3.   Whether ~~the plaintiff~~ Manuel Diaz was actively resisting arrest or attempting to evade arrest by flight;

4.   The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary; and,

5.   The type and amount of force used.

Source:  Ninth Circuit Model Jury Instruction – 9.22

## A.  **Plaintiffs' Objection**

Defendants' proposed instruction is an incomplete recitation of the applicable legal standard and omits reference to the availability of alternative methods to take the decedent into custody and the requirement that a warning be given when feasible.  Plaintiff proposes an alternate excessive force instruction inclusive of all the elements required.

Given that this case involves the use of deadly force, Plaintiff's alternate instruction also includes language that is specific to the circumstances of this case, such as when an officer may use deadly force.  Indeed, as for the second *Graham* factor, the standard is not that a police officer may shoot and kill a person when any threat is percieved.  Rather, the requisite perception to justify the use of deadly force in defense of one's self or others is that there be *an imminent threat of death or serious bodily injury*.  "[T]he Supreme Court did not limit the reasonableness inquiry to the factors set forth in *Graham*" and this list of elements in 9.22 is similarly not restricted. *Smith v. City of Hemet*, 394 F.3d at 701.  "[T]he instructions as a whole [should] 'fairly and adequately cover[] the issues presented." *Brewer v. City of Napa*, 210 F.3d 1093, 1096–97 (9th Cir.2000).  Accordingly, the 9.22 instruction should account for the fact that the nature of the force used was deadly force.

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 34

<u>Fourth Amendment—Excessive Force—Shooting</u>

The shooting was reasonable only if Officer Bennallack reasonably believed that Manuel Diaz posed an immediate threat of death or serious physical harm at the time Officer Bennallack fired his weapon.  A simple statement by the officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern.  Moreover, whenever feasible, a warning must be given before deadly force is employed.

<u>Note</u>:  Plaintiff proposes this instruction in the alternative if the Court gives Defendants' Excessive force instruction, which omits any reference to the standard for deadly force and the requirement that a warning be given when feasible. Plaintiffs are sensitive to an objection to a stand-alone instruction, and would therefore propose in the alternative that these three elements be included or reflected in the 9.22 instruction.  "[T]he Supreme Court did not limit the reasonableness inquiry to the factors set forth in *Graham*" and this list of elements in 9.22 is similarly not restricted. *Smith v. City of Hemet*, 394 F.3d at 701.  "[T]he instructions as a whole [should] 'fairly and adequately cover[] the issues presented." *Brewer v. City of Napa*, 210 F.3d 1093, 1096–97 (9th Cir.2000). Accordingly, the 9.22 instruction should account for the fact that the nature of the force used was deadly force.

<u>Source</u>:  *Tennessee v. Garner*, 471 U.S. 1, 8-9, 11-12 (1985) ("Thus, if the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."); *Bryan v. McPherson*, __ F.3d __, 2009 WL 5064477, at *2 (9th Cir. Dec. 28, 2009) (Fourth Amendment requirement is to "'balance the amount of force applied against the need for that force.'") (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir.

- 36 -

2003); *id.* at *5 ("The 'most important' factor under *Graham* is whether the suspect posed an 'immediate threat to the safety of the officers or others.'") (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (*en banc*)); *id.* at *5 ("A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."); *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("Moreover, whenever practicable, a warning must be given before deadly force is employed."); *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991) ("It was generally established at the time of the shooting that an officer could use deadly force to effectuate an arrest if, under the circumstances, he reasonably believed that such force was necessary to protect himself or others from serious bodily harm."); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (holding that "police officers could not reasonably have believed that the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time"); *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) ("In such a case, the Fourth Amendment's reasonableness test applies, tempered by the special constitutional rules governing deadly force.") (citing *Scott* and *Garner*); *Price v. Sery*, 513 F.3d 962, 966-67 (9th Cir. 2008); *Scott v. Harris*, 550 U.S. 372, 382-83 (2007) (noting that *Garner* represents an application of the Fourth Amendment's reasonableness test to "a policeman's shooting a gun so as to hit a person"); *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000), *vacated on other grounds*, 534 U.S. 801(2001), (quoting *Chew*, 27 F.3d at 1443) ("[P]olice are 'required to consider what other tactics if any were available to effect the arrest.'"). *But see* U.S. Court of Appeals for the Ninth Circuit, Manual of Model Civil Jury Instructions, Instruction 9.23 (Withdrawn 12/2007).

## A.    Defendants' Objection

Ninth Circuit Model Jury Instruction 9.22 adequately addresses claims for excessive force under 42 U.S.C. § 1983.  The defendants refer the Court to the defendants' proposed instruction 33B.  Because the model jury instruction adequately addresses claims for excessive force under the Fourth Amendment, the defendants submit that the plaintiffs' proffered instruction is unnecessary, duplicative, and is likely to confuse and mislead the jury.

## DEFENDANTS' PROPOSED INSTRUCTION #35A

## PARTICULAR RIGHTS – FOURTEENTH AMENDMENT RIGHTS— FREEDOM FROM INTERFERENCE WITH FAMILIAL RELATIONS

Parents have a Fourteenth Amendment liberty interest in the companionship and society of their children.  Official conduct that "shocks the conscience" in depriving a family member of that interest is a violation of the family member's substantive due process rights.

To prove that she suffered a violation of her substantive due process rights, Genevieve Huizar must prove by a preponderance of the evidence that Officer Nick Bennallack engaged in conduct that "shocks the conscience".  Where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm, unrelated to legitimate law enforcement objectives.

Source:  Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008); Curnow ex rel. Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir.1991).

### A.    Plaintiffs' Objection

Defendants' Fourteenth Amendment Instruction usurps the jury's fact-finding role and makes the factual finding that no time for deliberation was practicable – warranting the purpose to harm standard.  This is improper.  Plaintiff proposes an alternate instruction that provides the jury with the correct and complete legal standard.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 35B**

**FOURTEENTH AMENDMENT INTERFERENCE WITH**

**FAMILIAL RELATIONSHIP**

As previously explained, the plaintiffs have the burden to prove that the acts and the failures to act of Officer Nick Bennallack deprived the plaintiff of her particular rights under the United States Constitution.

Under the Due Process Clause of the Fourteenth Amendment, a person has the right to be free from governmental interference with their familial relationships.  In order to prove that Officer Nick Bennallack deprived the plaintiff of her Fourteenth Amendment right to be free from unreasonable state interference with their relationship with the decedent (her son), the plaintiff must prove by a preponderance of the evidence that Officer Bennallack acted with deliberate indifference.

Deliberate indifference is reflected by a conscious disregard for a risk to health or safety of the decedent.

However, if you find that actual deliberation by Officer Bennallack was impractical before the use of deadly force, then the plaintiff must instead prove by a preponderance of the evidence that when Officer Bennallack shot and killed Manuel Diaz, he acted with a purpose to harm Manuel Diaz that was unrelated to a legitimate law enforcement objective.

Source:  *Porter v. Osborn,* 546 F.3rd 1131, 1136-37 (2009); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372-73 (9th Cir. 1998).  This accurately permits the jury an opportunity to first decide whether Officer Diaz had time to deliberate, and then, based on that factual determination, instructs the jury as to the appropriate standard to apply.

A. **Defendants' Objection**

The defendants object to the plaintiffs' proposed version of a Fourteenth Amendment instruction, because it is not an accurate statement of the law, under Porter v. Osborn, 546 F.3d 1131 (9th Cir. 2009).  The defendants submit that their proposed instruction provides an accurate statement of the law, under the facts of this case.

The defendants have offered evidence that Officer Bennallack made a "split-second" decision to use deadly force against Manuel Diaz because he felt his life and the life of his fellow officer was in danger.  The facts and circumstances that underlie this case fall squarely within the framework of cases where the "purpose to harm" – not "deliberate indifference" – standard has been applied.  See, e.g., Porter v. Osborn, 546 F.3d 1131, 1133 (9th Cir. 2008) (motorist shot and killed by officer during investigation of suspicious vehicle where, "[t]here is no dispute that it took very little time-probably no more than five minutes-for the entire tragic encounter to play out."); Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365 (9th Cir. 1998) (officers responding to gun fight in crowded parking lot where officers had to "address a life-threatening situation"); Onossian v. Block, 175 F.3d 1169, 1171 (9th Cir. 1999) (officers involved in high speed chase that resulted in injuries to bystanders).  In contrast to the facts of this case, the "deliberate indifference" standard is applied to situations where police have "extended opportunities to do better" that are "teamed with protracted failure even to care." County of Sacramento v. Lewis, 523 U.S. 833, 853 (1998).  The cases that have applied the "deliberate indifference" are vastly different than what occurred in this incident.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 684 (9th Cir. 2001) (involving obvious, mistaken detention of mentally ill man for over two years).

In Porter, *supra*, the Ninth Circuit reversed a district court's ruling that the "deliberate indifference" standard should apply, because, during the five-minute investigation, the events were in "constant flux" and "escalating":

1       The district court's conclusion that Osborn had opportunity for

2   actual deliberation, and thus that deliberate indifference should

3   apply, assumed that five minutes was enough time for Osborn

4   to consider what he was doing before he acted. However,

5   "deliberation" for purposes of the shocks the conscience test is

6   not so literal a concept . . . Here the events in the pullout were

7   in constant flux, with much yelling, confusion and a driver who

8   was refusing to exit or stop his car.  To be sure, the record

9   contains facts suggesting that Osborn's own conduct created

10  and agitated this escalating situation and that his reactions were

11  disproportionate to the situation he faced. **Such facts, however,**

12  **as we explain below, are more relevant to the next step of**

13  **the analysis, when the district court determines on remand**

14  **whether they may show Osborn's purpose was to harm**

15  **Casey for reasons unrelated to legitimate law enforcement**

16  **objectives.**

17  Id. at 1139-40 (emphasis added).  The facts in this case parallel those in Porter, in

18  the sense that the events unfolded rapidly – less than a minute from the time the

19  officers first observed Diaz and the time the shots were fired.  As the Ninth Circuit

20  held in Porter, these facts are relevant in the analysis of whether Officer

21  Bennallack's purpose was to harm Manuel Diaz for reasons that were unrelated to

22  legitimate law enforcement objectives.

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION #36

## CAUSATION

In order to establish that the acts of ~~the defendant~~ Officer Nick Bennallack deprived ~~the plaintiff~~ Manuel Diaz or Genevieve Huizar of their particular rights under the United States Constitution as explained in later instructions, the plaintiffs must prove by a preponderance of the evidence that the acts were so closely related to the deprivation of the plaintiff's and decedent's rights as to be the moving force that caused the ultimate injury.

Source:  Ninth Circuit Model Jury Instruction – 9.8

### A.    Plaintiffs' Objection

This Ninth Circuit  Model Instruction is intended to govern a claim for municipal liability under *Monell* and its progeny.  It is not the proper causation instruction for any claim of individual liability under Plaintiff's federal claims or for any of Plaintiff's state law claims.  Since there is no *Monell* claim in this case, this instruction is improper and an inaccurate statement of the law.

### B.    Defendants' Response

The plaintiffs have offered no authority to support their argument that Ninth Circuit Model Jury Instruction 9.8 is only applicable to a Monell claim.  The plaintiffs' argument lacks merit for two reasons.  First, a causation instruction is directly appropriate in any claim brought under Section 1983, regardless of whether the claim is against an individual or a municipality.  See 9th Cir. Model Jury Instr. 9.8; Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir. 1992).  Moreover, the very language of Instruction 9.8 indicates that the instruction applies to claims under Section 1983 brought against individual defendants, as well as claims

- 43 -

against municipalities.  Id. (directing trial court to "specify name of individual defendant, supervisor's subordinates, local governing body, or local body's official, police officer, employee, or final policymaker" in instructing the jury using "moving force" language).

## DEFENDANTS' PROPOSED INSTRUCTION #37

## MERELY NEGLIGENT CONDUCT IS NOT A CIVIL RIGHTS VIOLATION

Conduct that amounts to nothing more than negligence does not constitute a civil rights violation.  The standard of 'reasonableness' under the Fourth Amendment is not the same as the standard of 'reasonable care' under tort law. Negligent acts do not incur liability under 42 U.S.C. § 1983.

Source:  Daniels v. Williams, 474 U.S. 327 (1986); Billington v. Smith, 292 F.3d 1177, 1190 (9th Cir. 2002); Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989).

### A.    Plaintiff's Objection

This instruction is unnecessary.  The jury will consider each claim based on the law provided in the corresponding instruction.  That Plaintiff is permitted to proceed on alternate (and even inconsistent) legal theory goes without saying. There is no precedent that requires that the jury be instructed pursuant to this legal principle and there is no authority justifying that the jury receive instructions concerning the differences among plaintiff's state and federal claims.

### B.    Defendants' Response

The defendants submit that this instruction is an accurate statement of the law that will assist the jury in assessing liability.  Moreover, this statement of the law helps the jury to distinguish between a situation where they might believe that conduct amounts to negligence, but does not rise to the level of excessive force.

///

## DEFENDANTS' PROPOSED INSTRUCTION #38

### EXPERT WITNESS TESTIMONY CONCERNING USE OF FORCE

The fact that an expert witness disagrees with a peace officer's actions after the fact does not render the officer's actions unreasonable.  It is up to you, as the jury, to decide whether a reasonable officer could have believed that the officer's conduct was justified under the circumstances.

Source:  Scott v. Henrich, 39 F.3d 912 (9th Cir. 1994); Reynolds v. County of San Diego. 84 F.3d 1162 (9th Cir. 1996); Billington v. Smith, 292 F.3d 1177, 1189 (9th Cir. 2002).

### A.    Plaintiffs' Objection

This instruction is duplicative of the court's instructions already being given on what is and what is not evidence, as well as how to weigh the evidence and credibility of witnesses.  This is also an incomplete and inaccurate statement of the law, as juries are entitled to consider the testimony of expert witnesses, based on their training and experience, when considering the reasonableness of an officer's use of force.

This instruction is also prejudicial and one-sided.  Defendants' experts obviously won't disagree with the officers' actions, so the only party whose witnesses this instruction is designed to target, is plaintiff's.

### B.    Defendants' Response

The defendants submit that this instruction is an accurate statement of the law that will assist the jury in assessing liability and determining what weight to give the testimony of plaintiffs' expert, Roger Clark.

**DEFENDANTS' PROPOSED INSTRUCTION #39**

**USE OF FORCE IS FROM PERSPECTIVE OF REASONABLE OFFICER**

You should decide the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  The issue is whether a reasonable officer in Officer Nick Bennallack's shoes would have feared for his life, not what was in the mind of the decedent.

This principle applies to the events leading up to the shooting as well as the shooting itself.  A plaintiff does not establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided.

Source:  Billington v. Smith, 292 F.3d 77, 1190 (9th Cir. 2002); Bell v. City of East Cleveland, 125 F.3d 855 (6th Cir. 1997)

**A.     Plaintiffs' Objection**

This instruction proffers multiple incomplete statements of the law.  While Plaintiff agrees that the central issue concerning the Fourth Amendment excessive force and state law battery claim is whether Officer Bennallack reasonably believed that Mr. Diaz posed an imminent or immediate threat of death or serious bodily injury, this issue is covered by Plaintiff's Model Instruction 9.22 and Plaintiff's CACI 1305.  Instruction 9.22 also instructs the jury on the 20/20 hindsight prohibition.

Plaintiff agrees that what was in the mind of decedent is irrelevant, especially if it was unknown to Officer Bennallack, but this stand-alone phrase is confusing as stated in this instruction.

1       Finally, the statement that "there is no constitutional violation where bad

2   tactics result in a deadly confrontation that could have been avoided" is an

3   incorrect statement of the law.  The Ninth Circuit recognizes a provocation theory

4   for civil rights violations based on excessive deadly force.  *See e.g., Alexander v.*

5   *City and County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994) (Officers can be

6   liable for their use of deadly force where their reckless and unconstitutional

7   provocation created the need to use force); *Billington v. Smith*, 292 F.3d 1177 (9th

8   Cir. 2002) (same).

9

10      **B.**     **Defendants' Response**

11      The defendants submit that this instruction is an accurate statement of the

12   law that will assist the jury in assessing liability.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **DEFENDANTS' PROPOSED INSTRUCTION #40**

2 **A POLICE OFFICER NEED NOT ACTUALLY SEE A WEAPON BEFORE**

3 **USING DEADLY FORCE**

4

5      If a police officer is confronted by the appearance of danger which he

6 believes, and a reasonable person in the same position would believe, would result

7 in death or great bodily injury, the officer may act upon those circumstances.  The

8 right of self-defense is the same whether the danger is real or merely apparent.

9 Source:  People v. Minifie, 13 Cal.4th 1055, 1068 (1996); Moreland v. Las Vegas

10 Metro. Police Dep't, 159 F.3d 365, 371, n.4 (9th Cir. 1998).

11

12     **A.**     **Plaintiff's Objection**

13      The way this special instruction is written is confusing.  Moreover, it is an

14 incomplete and inaccurate statement of the law.  While defendants propose no self-

15 defense instruction of their own (and elsewhere in this document claim that they

16 do not assert that Officer Bennallack fired in self-defense), this special instruction

17 proposed by the defense leaves the remainder of the law on the use of deadly force

18 out, while isolating only a few select phrases from principles that happen to be

19 helpful to the defendants' case.  These principles, however, are already embodied

20 elsewhere in the Model Instructions, particularly Ninth Circuit Model Instruction

21 9.22 and CACI 1305, and in Plaintiff's proposed instruction on self-defense. This

22 instruction is duplicative, unnecessary, prejudicial, and should not be given.

23

24     **B.**     **Defendants' Response**

25      "The defendants submit that this proposed instruction is an accurate

26 statement of the law.  Moreover, the plaintiffs have repeatedly argued that Officer

27 Bennallack should have not used deadly force because he never actually saw a

28 gun.  However, the law does not require that an officer actually see a gun pointed

- 49 -

at him before using deadly force.  Therefore, the defendants submit that this instruction is necessary to educate the jury."

JOINT [PROPOSED] JURY INSTRUCTIONS (AGREED UPON, DISPUTED WITH OBJECTIONS & ALTERNATIVE)

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 41A

<u>Battery by Peace Officer</u>

Plaintiff claims that Officer Bennallack harmed the decedent by using unreasonable force against Manuel Diaz ~~to [arrest [him/her]/prevent [his/her]~~ ~~escape/overcome [his/her] resistance/[*insert other applicable action*]~~.  To establish this claim, Plaintiff must prove all of the following:

> 1. ~~That [name of defendant] intentionally touched [name of~~
> ~~plaintiff] [or caused [name of plaintiff] to be touched];~~

> 2. That Officer Bennallack used unreasonable force *against*
> *Manuel Diaz* ~~to [arrest/prevent the escape of/overcome the~~
> ~~resistance of/insert other applicable action] [name of plaintiff];~~

> 2. That Manuel Diaz did not consent to the use of that
> force;

> 3. ~~That Manuel Diaz was harmed; and~~

> 4. That Officer Bennallack's use of unreasonable force was a
> substantial factor in causing Maneul Diaz' ~~harm~~ death.

~~[A/An] [*insert type of peace officer*] may use reasonable force to arrest or~~ ~~detain a person when he or she has reasonable cause to believe that that person has~~ ~~committed a crime.  Even if the [*insert type of peace officer*] is mistaken, a person~~ ~~being arrested or detained has a duty not to use force to resist the [*insert type of*~~ ~~peace officer*] unless the [*insert type of peace officer*] is using unreasonable force.~~

In deciding whether Officer Bennallack used unreasonable force, you must determine the amount of force that would have appeared reasonable to a police officer in Bennallack's position under the same or similar circumstances.  You should consider, among other factors, the following:

> (a) The seriousness of the crime at issue;

(b) Whether Manuel Diaz reasonably appeared to pose an immediate threat *of death or serious bodily injury* to ~~the safety of~~ Officer Bennallack or to others at the time of the use of force; and

(c) Whether the Manuel Diaz was actively resisting arrest or attempting to evade arrest.

~~[[A/An] [*insert type of peace officer*] who makes or attempts to make an arrest is not required to retreat or cease from his or her efforts because of the resistance or threatened resistance of the person being arrested.]~~

Source:  CACI 1305 (modified).

### A.     Defendants' Objection

Because the plaintiffs have asserted a separate claim for battery, the defendants submit that the California Jury Instruction CACI 1305 is appropriate. However, the defendants object to the plaintiffs' proposed omission of certain language from the standard instruction.  The defendants' proposed instruction is outlined below.

## DEFENDANTS' PROPOSED INSTRUCTION 41B

### BATTERY BY PEACE OFFICER

Plaintiff claims that Officer Bennallack harmed Manuel Diaz by using unreasonable force. To establish this claim, the plaintiffs must prove all of the following:

1. That Officer Bennallack used unreasonable force to against Manuel Diaz;

2. That Manuel Diaz did not consent to the use of that force;

3. That Manuel Diaz was harmed; and

4. That [name of defendant]'s use of unreasonable force was a substantial factor in causing Manuel Diaz's harm.

A police officer may use reasonable force to arrest or detain a person when he or she has reasonable cause to believe that that person has committed a crime. Even if the police officer is mistaken, a person being arrested or detained has a duty not to use force to resist the police officer unless the officer is using unreasonable force.

In deciding whether Officer Bennallack used unreasonable force, you must determine the amount of force that would have appeared reasonable to a police officer in Officer Bennallack's position under the same or similar circumstances. You should consider, among other factors, the following:

(a) The seriousness of the crime at issue;

(b) Whether Manuel Diaz reasonably appeared to pose an immediate threat to the safety of Officer Bennallack or others; and

(c) Whether Manuel Diaz was actively resisting arrest or attempting to evade arrest.

1

2      A police officer who makes or attempts to make an arrest is not required to

3 retreat or cease from his or her efforts because of the resistance or threatened

4 resistance of the person being arrested.

5

6     **A.**    **Plaintiff's Objections**

7      Defendants' proposed instruction contains elements that are inapplicable to

8 the facts of this case.  Officer Bennallack admits that he had no information that

9 any crime was taking place, therefore Defendants' version of CACI 1305 usurps

10 the role of the jury and assumes (and in fact, injects) facts that simply will not be

11 in evidence.  Defendants' proposed instruction also fails to account for Mr. Diaz'

12 death and confusingly refers instead to some "harm. "

13

14     **B.**    **Defendants' Response**

15      "The plaintiffs would like to pick and choose the elements of the CACI jury

16 instruction that benefit their case.  The defendants submit that if CACI 1305 is

17 given, it be given as it was drafted."

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 42

### Self-Defense

Officer Bennallack claims that he is not responsible for Manuel Diaz' death because he was acting in self-defense.  To succeed on his claim, Officer Bennallack has the burden of proving by a preponderance of the evidence both of the following:

1.    That Officer Bennallack reasonably believed that Manuel Diaz posed an immediate threat of death or serious bodily injury at the time that Officer Bennallack used deadly force; and

2.    That deadly force was necessary to stop the threat.

Source:  Plaintiffs contend that this instruction is necessary in order to ensure that the jury, in evaluating Officer Bennallack's claim of self-defense in response to Plaintiff's state law battery claim, properly allocates the burden of proof to Officer Bennallack.  *People v. Humphrey,* 13 Cal.4th 1073, 1093 (1996) ("the statutory basis for self-defense, as described in Penal Code sections 197 and 198, permits killing to prevent great bodily injury or death when there is "reasonable ground" to believe such harm is threatened and "imminent danger" of the threat "being accomplished...."); *People v. Clark*, 130 Cal.App.3d at 380, citing *People v. Jones*, 191 Cal.App.2d 478, 482 (1961) ("[D]eadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury…" "[I]n order for [a] *homicide* to be justified as a matter of law[,] it must further appear that defendant's resort to deadly force was necessary or appeared to be *necessary at the time*."); *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The force used must be proportionate to the threat.  As such, in order for *deadly force* to be justified in "self-defense," a self-defense instruction cannot simply justify the use of deadly force in response to *any kind of harm* to *any person* at some *unknown point in time*.  In order for *deadly force* to be proportionate in self-defense, the threat must be imminent and risk death or serious bodily injury.

## A.   **Defendants' Objection**

This proposed jury instruction is inappropriate, where the defendants have not asserted self-defense as an affirmative defense.  See Pre-Trial Conf. Order. Therefore, for that reason alone, this instruction should be rejected.

Moreover, in offering this jury instruction, the plaintiffs attempt to shift the burden of proof to the defendants.  To establish their excessive force claim, the plaintiffs must establish that Officer Bennallack's use of deadly force was objectively unreasonable.  It is not the defendants' burden to prove that the use of deadly force was reasonable; rather, it is the plaintiffs' burden to prove that the use of deadly force was unreasonable.  See 9th Cir. Model Jury Instr. 9.22. Specifically, the second factor outlined in Ninth Circuit Model Jury Instruction 9.22 requires that the jury analyze "whether [the decedent] posed an immediate threat to the safety of [the officer] or to others."  Therefore, whether Officer Bennallack believed that Manuel Diaz posed an immediate threat to his safety or to others is an essential element of the plaintiffs' excessive force claim.  Any argument made by the defense that Officer Bennallack believed that Manuel Diaz posed an immediate threat to his safety or to others is not a passive assertion of an affirmative defense; it is a direct challenge to an essential element of the plaintiffs' excessive force claim."

## B.   **Plaintiff's Response**

Defendants' Objection fails to consider Plaintiff's state law claim for battery

by a peace officer – to which self-defense is an affirmative defense.  Throughout this litigation, Defendants repeatedly claim that Officer Bennallack fired in self-defense.  Officer Bennallack himself claims that he thought that his life was in danger, which is why he shot Mr. Diaz.

The position that Defendants now take (the PTCO does not contain self-defense as an affirmative defense) is simply an attempt to avoid bearing the burden of proof on their affirmative defense.  However, the law is clear.  When an affirmative defense is asserted, such as self-defense, the burden of proof shifts to the party asserting said defense.  Plaintiffs also state in their pretrial papers, that they anticipate that Officer Bennallack will argue that he fired in self-defense.

If Defendants do not claim that Officer Bennallack fired in self-defense, then the relevance of much of the evidence that Defendants claim to introduce falls into question, including evidence that Officer Bennallack thought that Mr. Diaz was armed, was reaching into his waistband, and was turning.  A self-defense instruction must be given to ensure that the jury properly analyzes defendants' claim in accordance with the applicable legal standard.

**DEFENDANTS' PROPOSED INSTRUCTION #43A**

**NEGLIGENCE – ESSENTIAL FACTUAL ELEMENTS**

The plaintiffs claim that ~~[he] [she]~~ Manuel Diaz was harmed by the negligence of Officer Bennallack.  To establish this claim, the plaintiffs must prove all of the following:

    1.     That Officer Bennallack was negligent;

    2.     That Manuel Diaz was harmed; and

    3.     That the negligence of Officer Bennallack was a substantial factor in causing Manuel Diaz's death.

Source:  CACI 400


**PLAINTIFF'S PROPOSED INSTRUCTION 43B**

CACI 400 - Negligence – Essential Factual Elements

*Plaintiff* claims that *Manuel Diaz* was harmed *by Officer Bennallack's negligence*.  To establish this claim, *Plaintiff* must prove all of the following:

    1 That *Officer Bennallack* was negligent; and

    3 That Officer Bennallack's negligence was a substantial factor in causing *Manuel Diaz' death*.


Source: CACI 400 (Modified for wrongful death claim).

1    **DEFENDANTS' PROPOSED INSTRUCTION #44A**

2    **NEGLIGENCE – BASIC STANDARD OF CARE**

3

4    Negligence is the failure to use reasonable care to prevent harm to oneself or

5    to others.

6    A person can be negligent by acting or by failing to act. A person is

7    negligent if he or she does something that a reasonably careful person would not

8    do in the same situation or fails to do something that a reasonably careful person

9    would do in the same situation.

10    You must decide how a reasonably careful police officer would have acted

11    in the same situation as Officer Nick Bennallack's situation.

12    You must also decide how a reasonably careful person would have acted in

13    the same situation as Manuel Diaz's situation.

14

15    <u>Source</u>:  CACI 401

16

17    **A.    Plaintiffs' Objection**

18    The last sentence is duplicative of Defendant's comparative fault

19    instruction.  If the Court gives Defendant's comparative fault instruction, it need

20    not instruct the jury again to consider the negligence of the decedent.  Plaintiff

21    proposes the model CACI Instruction.

22

23    **B.    Defendants' Response**

24    Because the alleged negligence of both Officer Bennallack and Manuel Diaz

25    is at issue in this case, the defendants have added a final sentence to this "standard

26    of care" instruction that addresses the standard of care for Manuel Diaz.  This

27    sentence mirrors the language of the standard CACI instruction.  It is unclear why

28    the plaintiffs believe this sentence should be excluded when, clearly, Manuel

Diaz's negligence and his standard of care must be considered by the jury.

# PLAINTIFF'S PROPOSED INSTRUCTION 44B

## CACI 401 – Negligence - Basic Standard of Care

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful police officer would have acted in Officer Bennallack's situation.

Source: CACI 401.

### B.      Defendants' Objection

Because the alleged negligence of both Officer Bennallack and Manuel Diaz is at issue in this case, the defendants have added a final sentence to this "standard of care" instruction that addresses the standard of care for Manuel Diaz.  This sentence mirrors the language of the standard CACI instruction.  It is unclear why the plaintiffs believe this sentence should be excluded when, clearly, Manuel Diaz's negligence and his standard of care must be considered by the jury.

## DEFENDANTS' PROPOSED INSTRUCTION #45

### COMPARATIVE FAULT OF DECEDENT

The defendants claim that Manuel Diaz's own negligence contributed to his death. To succeed on this claim, the defendants must prove both of the following:

1. That Manuel Diaz was negligent; and
2. That Manuel Diaz's negligence was a substantial factor in causing his death.

If the defendants prove the above, the plaintiffs' damages are reduced by your determination of the percentage of Manuel Diaz's responsibility. I will calculate the actual reduction.

Source: CACI 407

### A.    Plaintiffs' Objection

First, if given, this instruction should inform the jury that this affirmative defense is asserted only as to Plaintiff's negligence claim.

Second, to the extent that Defendants' affirmative defense is based on the fact that Mr. Diaz ran, this affirmative defense is improper. Mr. Diaz ran from a consensual encounter. The parties' experts agree that the incident began as a consensual encounter and that Mr. Diaz had committed no crime. By law and definition, a consensual encounter is the type of interaction with police from which a person is free to leave (or even, to run). The exercise of a constitutional right cannot be the basis for Mr. Diaz' negligence. In other words, Mr. Diaz cannot be held to have somehow contributed to or be at fault for his death by engaging in constitutionally protected activity.

## B.     Defendants' Response

The plaintiffs' objection to this affirmative defense instruction lacks merit and talk out of both sides of their mouth.  With regard to this instruction, the plaintiffs argue that "if given, this instruction should inform the jury that this affirmative defense is asserted only as to Plaintiff's negligence claim."  Yet, with regard to the defendants' proposed instruction that merely negligent conduct does not amount to a civil rights violation, the plaintiffs argue that, "there is no authority justifying that the jury receive instructions concerning the differences among plaintiff's state and federal claims."  Clearly, there is no need to expressly instruct the jury that the comparative fault defense applies only to the plaintiffs' negligence claim.  That is an issue that can and should be addressed by the Court.

Second, by objecting to this jury instruction, the plaintiffs appear to be asking the Court to summarily adjudicate this affirmative defense.  The plaintiffs never moved for summary adjudication of this defense and disputes over jury instructions are an inappropriate means of raising the issue.

**DEFENDANTS' PROPOSED INSTRUCTION #46**

**RELIANCE ON GOOD CONDUCT OF OTHERS**

Every person has a right to expect that every other person will use reasonable care and will not violate the law, unless he or she knows, or should know, that the other person will not use reasonable care or will violate the law.

Source:  CACI 411

### A.     Plaintiffs' Objection

This instruction has no place in a police misconduct case.  It is also inapplicable because it refers to the law that governs cases where plaintiffs claim that the defendant failed to protect from harm caused by the criminal conduct of third persons that was or could not have been foreseeable.  It also applies in cases where the third party owes a duty to the defendant.  Not only is there no evidence of criminal conduct by the decedent in this case that caused anyone harm or from which plaintiff claims that Officer Bennallack failed to protect her, but this instruction embodies an area of tort law and a factual scenario that has absolutely nothing to do with this case.  It should not be given.

### B.     Defendants' Response

The plaintiffs cite to no authority to support their argument that this instruction should not be given.  Contrary to the plaintiffs' argument, this instruction is appropriate under the facts of this case.  Indeed, as noted in the CACI "Directions for Use," this instruction is appropriate when there is evidence that the other actor (here, the decedent) acted unreasonably.  Cal. Civ. Jury Inst. (CACI) 411; Springer v. Reimers, 4 Cal.App.3d 325, 336 (1970).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 47

### CACI 413 Custom or Practice

*This instruction applies only to Plaintiff's wrongful death negligence claim.*

You may consider customs or practices in the community in deciding whether *Officer Bennallack* acted reasonably.  Customs and practices do not necessarily determine what a reasonable person would have done in *Officer Bennallack's* situation.  They are only factors for you to consider.

Following a custom or practice does not excuse conduct that is unreasonable. You should consider whether the custom or practice itself is reasonable.


Source: CACI 413; police department policies and procedures are evidence of and "bear[] on the standard of care that [the City of Anaheim Police Department] thought appropriate to insure the safety of others…" its officers, and adherence to a policy of the reasonable use of deadly force. *See Dillenbeck*, 69 Cal.2d at 477-78 ("(t)he [] rules of an employer are [] admissible as evidence that due care requires the course of conduct prescribed in the rule"), citing *Powell v. Pacific Electric Ry. Co.*, 35 Cal.2d 40, 46 (1950); *Beal v. Blumenfeld Theatres, Inc.*, 177 Cal.App.2d 192, 194 (1960); *Davis v. Johnson*, 128 Cal.App.2d 466, 472 (1954); *see also Grudt*, 2 Cal.3d at 588 (failure to follow policies is evidence of negligence).


### A.    **Defendants' Objection**

This proposed instruction is not applicable to the facts of this case.  First and foremost, all municipal liability claims have been dismissed.  Therefore, whether or not there is some sort of a custom or practice at the City of Anaheim is irrelevant.   Moreover, this instruction does not apply to the facts of this case.  A police officer's use of deadly force must be judged on a case-by-case basis.  There

is no "custom or practice" in the community of how an officer must respond a suspect under any given circumstances.  Indeed, excessive force cases are highly dependent on the specific facts of any given circumstances.  Under one set of facts, it may be reasonable for an officer to use deadly force on an individual holding a gun or other weapon.  However, under another set of facts, it may be unreasonable for an officer to use deadly force on an individual holding a gun or other weapon.

This jury instruction was tailored for cases such as medical malpractice cases where "custom or practice" in a given community is relevant to the analysis of negligence.  For instance, if a plaintiff went to the dentist complaining of a tooth ache and the dentist extracted the tooth, to custom and practice of other dentists in the community would be relevant to the analysis of whether the dentist properly extracted the tooth.

**B.**    **Plaintiffs' Response**

The California Supreme Court's recent ruling in *Hayes v. County of San Diego*, 57 Cal.4th 622 (Cal. 2013) reaffirms its earlier decision in *Grudt v. City of Los Angeles*, 2 Cal.3d 575 (Cal. 1970) that POST standards and the policies and procedures of a police department are relevant to the totality of the circumstances analysis when determining the negligence of a police officer.  While conformity with or the violation of POST standards or a department's policies and procedures does not, in itself, determine negligence, Supreme Court precedent clearly states that such evidence is highly probative. The relevance of a police department's policies and procedures and POST standards is not limited simply to a *Monell* claim.

1

## DEFENDANTS' PROPOSED INSTRUCTION #48A

2

## CAUSATION:  SUBSTANTIAL FACTOR

3

4       A substantial factor in causing harm is a factor that a reasonable person

5 would consider to have contributed to the harm. It must be more than a remote or

6 trivial factor. It does not have to be the only cause of the harm.

7

8 Source:  CACI 430

9

10      **A.      Plaintiff's Objection**

11      Defendants' proposed instruction omits the final sentence of the instruction.

12 Rather, Plaintiffs propose that the complete model instruction be given.

13

14      **B.      Defendants' Response**

15      The defendants submit that their version, not the plaintiffs version is

16 appropriate.

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 48B

### Causation – Substantial Factor

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Source: CACI 430

**A.     Defendants' Objection**

The defendants submit that their proposed instruction #48A is more appropriate under the facts and circumstances of this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 49

### CACI 431 – Multiple Causes

A person's negligence may combine with another factor to cause harm.  If you find that *Officer Bennallack's* negligence was a substantial factor in causing *Manuel Diaz'* ~~harm~~ *death*, then *Officer Bennallack* is responsible for the ~~harm~~ *death*.  *Officer Bennallack* cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing *Manuel Diaz'* ~~harm~~ *death*.

Source: CACI 431.

**A.   Defendants' Objection**

The defendants submit that this instruction is inappropriate, where they have asserted a comparative fault defense.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 50**

CACI 434 Alternate Causation

You may decide that more than one of the defendants was negligent, but that the negligence of only one of them could have actually caused *Manuel Diaz'* ~~harm~~ *death*. If you cannot decide which defendant caused Manuel Diaz' ~~harm~~ *death*, you must decide that each defendant is responsible for ~~the harm~~ *Manuel Diaz' death*.

However, if a defendant proves that *he/it* did not cause *Manuel Diaz' death* ~~harm~~, then you must conclude that defendant is not responsible.

Source: CACI 434

**A.   Defendants' Objection**

This instruction is only applicable in cases where there is more than one individual defendant or tortfeasor. Here, the only individual defendant is Officer Bennallack. Although the City of Anaheim is also a defendant, the only remaining claim against the City is premised on the City's vicarious liability for Officer Bennallack's conduct.

**B.   Plaintiffs' Response**

Since the jury will also determine that the City of Anaheim is liable, but need not determine that the City of Anaheim was a cause of the decedent's death, this instruction is necessary in order to prevent any jury confusion or misunderstanding.

1     **PLAINTIFFS' PROPOSED INSTRUCTION NO. 51**

2     Vicarious Liability – Introduction

3

4     An entity is responsible for harm caused by the wrongful conduct of its

5     employees while acting within the scope of their employment.

6

7     Source: CACI 3700.

8

9     **A.    Defendants' Objection**

10    The defendants submit that this instruction is unnecessary, in light of the fact

11    that the parties have stipulated that Officer Bennallack was acting under color of

12    law and in the course and scope of his employment as a police officer at the time

13    of the shooting.

14    **B.    Plaintiff's Response**

15    There is no stipulation that the City of Anaheim will be liable if Officer

16    Bennallack is found liable.  Therefore, this instruction and the jury's determination

17    on this issue is necessary.

18

19

20

21

22

23

24

25

26

27

28

# DEFENDANTS' PROPOSED INSTRUCTION #52

## PRESUMPTION OF NEGLIGENCE PER SE

### (Penal Code § 148(a)(1) – Resisting A Police Officer)

Penal Code § 148(a)(1) states: "*Every person who willfully resists, delays, or obstructs any . . . peace officer . . ., in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.*" This statute is violated if:

(a)   Officer Nick Bennallack was a peace officer lawfully performing or attempting to perform his duties as a peace officer;

(b)   Manuel Diaz willfully resisted, obstructed, or delayed Officer Nick Bennallack in the performance or attempted performance of those duties; and,

(c)   When Manuel Diaz acted, he knew, or reasonably should have known, Officer Nick Bennallack was a peace officer performing or attempting to perform his duties.

If you decide

1.   that Manuel Diaz violated this law and

2.   that the violation was a substantial factor in bringing about the harm, then you must find that Manuel Diaz was negligent.

If you find that Manuel Diaz did not violate this law or that the violation was not a substantial factor in bringing about the harm, then you must still decide whether Manuel Diaz was negligent in light of the other instructions.

Source:  CACI 418; CALCRIM 2656

### A.   Plaintiffs' Objection

First, this instruction is duplicative of Defendants' instruction for their contributory negligence affirmative defense.

Second, this instruction is inapplicable because there is no evidence in this case that Manuel Diaz committed any crime or violated any statute.  The parties experts agree that the incident began as a consensual encounter and that Mr. Diaz was not committing any crime.

Third, it is legally impossible to find liability for negligence per se on the basis that a person was engaging in constitutionally protected activity.  To the extent that Defendants' claim that Mr. Diaz was negligent is based on the fact that Mr. Diaz ran, the assertion of negligence per se is improper.  Mr. Diaz ran from a consensual encounter.  By law and definition, a consensual encounter is the type of interaction with police from which a person is free to leave (or even, to run).  The exercise of a constitutional right cannot be the basis for Mr. Diaz' negligence.  In other words, Mr. Diaz cannot be held to have violated the penal code and be at fault for his death by engaging in constitutionally protected activity.

### B.   Defendants' Response

The plaintiffs' objections to this instruction lack merit.  First, this instruction – which is entirely separate and distinct from the CACI instruction dealing with comparative fault – is not duplicative of the comparative fault instruction.  Rather, this instruction expressly concerns negligence per se.

Second, the incident occurred in a high-crime area and, after Diaz fled, the officers had reasonable suspicion to detain Diaz.  See Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000); United States v. Smith, 633 F.3d 889 (9th Cir. 2011).  Thereafter, according to the testimony of the officers and at least one independent witness, at least one of the officers ordered Diaz to stop and get on the ground, but Diaz refused to comply, probable cause existed to arrest Diaz for violating, at a

1  minimum, <u>Penal Code</u> § 148(a).  <u>See</u> <u>People v. Johnson</u>, Not Reported in

2  Cal.Rptr.3d, 2011 WL 1632199 at *11 (Cal. App. 5 Dist., 2011) (defendant's

3  refusal to obey Officer Lewis's lawful order to stop constituted probable cause for

4  a violation of either section 69 or section 148.").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT [PROPOSED] JURY INSTRUCTIONS (AGREED UPON, DISPUTED WITH OBJECTIONS & ALTERNATIVE)

# DEFENDANTS' PROPOSED INSTRUCTION #53A

## DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs, you must determine ~~the plaintiff's~~ Genevieve Huizar's damages.  The plaintiffs have the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiffs for any injury you find was caused by the defendants.  You should consider the following:

In determining the measure of damages, you should consider:

1.  The loss of gifts or benefits that Ms. Huizar would have expected to receive from Manuel Diaz;

2.  Funeral and burial expenses; and

3.  The reasonable value of household services that Manuel Diaz would have provided.

4.  The loss of Manuel Diaz's love, companionship, comfort, care, assistance, protection, affection, society, moral support;

5.  The loss of Manuel Diaz's training and guidance.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

~~If you decide that [name of plaintiff] has proved [his/her] claim against [name of defendant] for the death of [name of decedent], you must decide how much money will reasonably compensate [name of plaintiff] for the death of [name of decedent].  This compensation is called "damages."~~

[Name of plaintiff] does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

The damages claimed by [name of plaintiff] fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

[Name of plaintiff] claims the following economic damages:

1. The financial support, if any, that [name of decedent] would have contributed to the family during either the life expectancy that [name of decedent] had before [his/her] death or the life expectancy of [name of plaintiff], whichever is shorter;

2. The loss of gifts or benefits that [name of plaintiff] would have expected to receive from [name of decedent];

3. Funeral and burial expenses; and

4. The reasonable value of household services that [name of decedent] would have provided.

Your award of any future economic damages must be reduced to present cash value.

[Name of plaintiff] also claims the following noneconomic damages:

1. The loss of [name of decedent]'s love, companionship, comfort, care, assistance, protection, affection, society, moral support [;[and]/.]

2. [The loss of the enjoyment of sexual relations[; [and]/.]]

3. [The loss of [name of decedent]'s training and guidance.]

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense. In determining Ms. Huizar's loss, do not consider:

1. Ms. Huizar's grief, sorrow, or mental anguish;

2. Manuel Diaz's pain and suffering; or

3.      The poverty or wealth of Ms. Huizar.

~~In decding a person's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation.  According to [insert source of information], the average life expectancy of a [insert number]-year old [male/female] is [insert number] years.  This published information is evidence of how long a person is likely to live but is not conclusive.  Some people live longer and other die sooner.~~

Source:  Ninth Circuit Model Jury Instruction – 5.1, CACI 3921

A.      **Plaintiffs' Objection**

Defendants' proposed damages instruction fails to instruct the jury on survival damages.  It also broadens the scope of Plaintiff's wrongful death damages claim, the scope of which is simple – loss of companionship and funeral and burial expenses.  Plaintiff proposes an alternative damages instruction.

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 53B

### Damages

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Plaintiff on any of her claims, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the Plaintiff *and/or the decedent* for any injury you find was caused by the defendants.

You should consider the following *as to the decedent's damages*:

1.   *The nature and extent of the injuries;*

2.   *The loss of enjoyment of life experienced; and*

3.   *The mental, physical, and emotional pain and suffering experienced.*

You should consider the following *as to the Plaintiffs' damages:*

1.   The loss of the decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support;

2.   Funeral and burial expenses.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.


Source:   U.S. Court of Appeals for the Ninth Circuit, Manual of Model Civil Jury Instructions, Instructions 5.1, 5.2.  This combination of instructions 5.1 and 5.2 is appropriate and in conformity with Instruction 5.2, the comment to which instructs litigants to "[i]nsert [] the appropriate bracketed items [from 5.2- into Instruction 5.1."

## A. **Defendants' Objection**

The defendants object to the plaintiffs' request that the jury be allowed to award pain and suffering damages to the decedent, where the plaintiffs are not entitled to both survival and wrongful death damages in this action.  The damages recoverable to the successor in interest in the survival action are limited to those damages that are enumerated in Code of Civil Procedure § 377.34, specifically those "that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement."  CAL. CIV. PROC. CODE § 377.34.  The Ninth Circuit has never held that pain and suffering damages are recoverable in a survival action.  See 42 U.S.C. § 1988(a); Robertson v. Wegmann, 436 U.S. 584, 590 (1978); Mahach-Watkins v. Depee, 593 F.3d 1054 (9th Cir. 2010).  Therefore, it is respectfully submitted that California law should be followed.

In Mahach-Watkins, the plaintiff (the mother of a man who was killed by police) sought pain and suffering damages on the part of her son in a survival action.  The trial court refused to allow the jury to be instructed on pain and suffering damages to the decedent because, "[t]he Ninth Circuit has not addressed the question of what damages are available under a Section 1983 wrongful death claim" and, "[i]n the absence of a Ninth Circuit holding on the point . . the available damages on the § 1983 excessive force claim were 'those set forth in California's survival statute, Cal.Code Civ. Proc. § 377.34, [which] does not allow recovery for the decedent's loss of enjoyment of life, or the decedent's pain and suffering.'"  In upholding the district court's ruling on a collateral issue, the Ninth Circuit "assume[d] without deciding that as a matter of law compensatory damages were not available to the estate on the § 1983 excessive force claim."  Id. at 1060.

In light of this authority, the defendants object to any jury instruction that would suggest that the plaintiffs are entitled to pursue damages for pain and

1  suffering of the decedent.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**DEFENDANTS' PROPOSED INSTRUCTION #54**

**COMPARATIVE FAULT OF THE DECEDENT**

3

4   If you decide that Manuel Diaz's negligence, combined with Officer

5   Bennallack's conduct, ~~in causing~~ caused Manuel Diaz's harm, then you must

6   decide the percentage of responsibility for the harm that you attribute to each of

7   them.

8   First, decide the total amount of the plaintiffs' damages.  Then decide the

9   percentage of responsibility that Manuel Diaz and Officer Bennallack have for the

10  damages.  ~~Then reduce the total damages by the percentage of responsibility that~~

11  ~~you attribute to [name of plaintiff].~~

12  ~~After you make these calculations, state the reduced damage award in your~~

13  ~~verdict.~~

14

15  <u>Source</u>:  CACI 3960

16

17  **A.    Plaintiffs' Objection**

18  First, this instruction is duplicative of Defendants' instruction for their

19  contributory negligence and negligence per se instructions.

20  Second, it is legally impossible to find liability for negligence per se on the

21  basis that a person was engaging in constitutionally protected activity.  To the

22  extent that Defendants' claim that Mr. Diaz was negligent is based on the fact that

23  Mr. Diaz ran, the assertion of negligence per se is improper.  Mr. Diaz ran from a

24  consensual encounter.  By law and definition, a consensual encounter is the type of

25  interaction with police from which a person is free to leave (or even, to run).  The

26  exercise of a constitutional right cannot be the basis for Mr. Diaz' negligence.  In

27  other words, Mr. Diaz cannot be held to have violated the penal code and be at

28  fault for his death by engaging in constitutionally protected activity.

1   Third, this proposed instruction refers to the harm caused to Mr. Diaz, where it

2   should otherwise refer to Mr. Diaz' death.

3   **B.     Defendants' Response**

4          This instruction, which is entirely separate and distinct from the other CACI

5   instructions that address comparative fault and negligence per se, is not duplicative

6   of the defendants' other proposed instructions.  Instead, it explains to the jury how

7   to allocate fault, to the extent they find that Diaz's own negligence contributed to

8   his death.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT [PROPOSED] JURY INSTRUCTIONS (AGREED UPON, DISPUTED WITH OBJECTIONS & ALTERNATIVE)

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 55

### Punitive Damages – Entitlement Only

If you find for the plaintiffs, you may, but are not required to, award punitive damages.  The purpose of punitive damages is to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

The plaintiffs have the burden of proving by a preponderance of the evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the police officer's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the decedent's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the decedent.  Conduct is in reckless disregard of the decedent's rights if, under the circumstances, it reflects complete indifference to the decedent's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the decedent's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the decedent with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the decedent.

~~If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.~~

- 83 -

1  You may not, however, set the amount of any punitive damages in order to punish
2  the defendant for harm to anyone other than the plaintiff in this case].

3      [In addition, you may consider the relationship of any award of punitive
4  damages to any actual harm inflicted on the plaintiff.]

5      Punitive damages may not be awarded against the City of Anaheim. [You
6  may impose punitive damages against one or more of the defendants and not
7  others, and may award different amounts against different defendants.] [Punitive
8  damages may be awarded even if you award plaintiff only nominal, and not
9  compensatory, damages.]

10

11  Source: Ninth Cir. Model Instruction 5.5 (modified to omit the portion of the
12  instruction related to the amount of punitive damages).  If the Court bifurcates
13  punitive damages, for economy of witnesses and issues, Plaintiff believes it would
14  be most efficient to ask the jury an entitlement question, such as "was Officer
15  Bennallack's conduct malicious, oppressive, or in reckless disregard of the
16  decedent's rights," during the first phase of trial along with other liability
17  questions, and then address the amount of punitive damages, if any, during a
18  second phase.

19

20  ### A.   Defendants' Objection

21      The defendants object to this instruction for numerous reasons.  First, the
22  defendants submit that this instruction is inappropriate, where there is no evidence
23  that Officer Bennallack acted with malice, oppression or in reckless disregard of
24  Manuel Diaz's rights.

25      Second, the defendants object to the form of this instruction, where it
26  suggests that the burden of proof for punitive damages is only "preponderance of
27  the evidence."  The plaintiffs have asserted both state and federal claims in this
28  action.  While the "preponderance of the evidence" burden of proof is applicable

1   to the plaintiffs' federal claims, to the extent the plaintiffs seek punitive damages

2   in their state law claims, the appropriate burden of proof is "clear and convincing

3   evidence".  <u>See</u> Cal. Civ. Jury Instr. 3941 ("At this time, you must decide whether

4   [name of plaintiff] has proved by clear and convincing evidence that [name of

5   defendant] engaged in that conduct with malice, oppression, or fraud.").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION #56

### NO PUNITIVE DAMAGES

You must not include in your award any damages to punish or make an example of the City of Anaheim. Such damages would be punitive damages, and they cannot be a part of your verdict. You must award only the damages that fairly compensate the plaintiffs for their loss.

Source:  CACI 3924

### A.    Plaintiffs' Objection

This instruction is unnecessary.  Moreover, this stand-alone instruction is duplicative of Model Instruction 5.5.

### B.    Defendants' Response

In this action, the plaintiffs have asserted state tort claims against the City of Anaheim.  The only remaining such claims against the City are premised on vicarious liability for the conduct of Officer Bennallack.  The plaintiffs are admittedly seeking punitive damages against Officer Bennallack in this action and are asking that the Court give jury instructions relative to those punitive damages claims.  The plaintiffs cannot on one hand seek punitive damages against Officer Bennallack, then object to a standard, California Judicial Council jury instruction that instructs that punitive damages may not be awarded against the City. Contrary to the plaintiffs' contention, the standard instruction is not confusing or likely to mislead the jury.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' PROPOSED INSTRUCTION #57

### ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

Source:  CACI 3925

### A.    Plaintiffs' Objection

This instruction is duplicative of instructions that the Court has already indicated it will give concerning what is and what is not evidence.  This instruction is not necessary.

### B.    Defendants' Response

The defendants submit that this standard California Civil Jury Instruction would assist the trier of fact in determining damages in this action.  Here, it is expected that the plaintiffs will proffer little by way of evidence in support of their claim for damages.  Notwithstanding the minimal evidence that will be offered, plaintiffs' counsel will likely ask the jury to award at least seven figures to compensate Ms. Huizar for the loss of her son.  The defendants submit that in a case such as this, where the evidence of damages is minimal, the jury must receive an instruction that arguments of counsel are not a substitute for evidence.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' PROPOSED INSTRUCTION #58

## JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS

You must not consider, or include as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

<u>Source</u>:  CACI 3964

### A.      Plaintiffs' Objection

This instruction is duplicative of instructions that the Court has already indicated it will give concerning what is and what is not evidence and duplicative of Plaintiffs' proposed instruction concerning what considerations the jury may and may not take when determining damages.  Moreover, counsel does not intend to advise the jury of the costs of suit or reference any attorney fees provision. This instruction is not necessary.

### B.      Defendants' Response

The defendants submit that this standard California Civil Jury Instruction would assist the trier of fact in determining damages in this action.

## JOINT & AGREED UPON INSTRUCTION #59

### DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source:  Ninth Circuit Model Jury Instruction – 3.1

1
2
3

**JOINT & AGREED UPON INSTRUCTION #60**

**COMMUNICATION WITH COURT**

4    If it becomes necessary during your deliberations to communicate with me,

5  you may send a note through the marshal, signed by your presiding juror or by one

6  or more members of the jury.  No member of the jury should ever attempt to

7  communicate with me except by a signed writing; I will communicate with any

8  member of the jury on anything concerning the case only in writing, or here in

9  open court.  If you send out a question, I will consult with the parties before

10  answering it, which may take some time.  You may continue your deliberations

11  while waiting for the answer to any question.  Remember that you are not to tell

12  anyone—including me—how the jury stands, numerically or otherwise, until after

13  you have reached a unanimous verdict or have been discharged.  Do not disclose

14  any vote count in any note to the court.

15

16  Source:  Ninth Circuit Model Jury Instruction – 3.2

17
18
19
20
21
22
23
24
25
26
27
28

JOINT [PROPOSED] JURY INSTRUCTIONS (AGREED UPON, DISPUTED WITH OBJECTIONS & ALTERNATIVE)

## JOINT & AGREED UPON INSTRUCTION #61

### RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

<u>Source</u>:  Ninth Circuit Model Jury Instruction – 3.3